VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street, PO Box 187
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 20-CV-00967



| Rene Benoit v. Green Mountain Transit |
| --- |

## DECISION ON MOTION TO DISMISS

Plaintiff Rene Benoit and Nancy Clodgo were unmarried domestic partners. Ms. Clodgo's employer, Defendant Green Mountain Transit ("GMT"), allowed its employees to include domestic partners on its employer-provided insurance without reference to marital status. In December 2017, however, GMT changed its policy; it continued to allow its employees to include domestic partners on its insurance plan, but charged an additional premium for unmarried domestic partners. Ms. Clodgo sued, alleging a violation of her rights under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 ("VFEPA"). This court granted judgment on the pleadings in favor of GMT, and the Supreme Court affirmed. *Clodgo v. Green Mtn. Transit*, no. 2020-157, 2020 WL 7121770 (Dec. 4, 2020) (unpub. mem.). Now, Mr. Benoit sues, asserting virtually identical claims; GMT moves to dismiss. The court grants the motion.

GMT asserts three arguments in favor of dismissal. First, it argues that res judicata bars the relitigation here of claims that were conclusively resolved in Ms. Clodgo's suit. Second, it argues that Mr. Benoit lacks standing to bring a VFEPA claim. Finally, it argues that no VFEPA claim properly lies. Each of these arguments is sufficient to defeat Mr. Benoit's claim.

The doctrine of res judicata is well established. It "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical.' " *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 56 (1992) (quoting *Berisha v. Hardy*, 144 Vt. 136, 138 (1984)). The bar extends beyond issues that were actually litigated to those that should have been raised. *Berisha*, 144 Vt. at 138. "For res judicata purposes, the cause of action is the same if the same evidence will support the action in both instances." *Hill v. Grandey*, 132 Vt. 460, 463 (1974).

It is beyond dispute that there was a final judgment in Ms. Clodgo's action. Mr. Benoit's observation that "the merits of Ms. Clodgo's claim were not addressed in the prior litigation," Opp'n to

Mot. to Dismiss, 3, is a red herring. What matters is that the subject matter and causes of action in this and Ms. Clodgo's case are identical. Indeed, comparison of the two complaints suggests that Mr. Benoit's complaint, drafted by the same lawyer, was lifted virtually verbatim from Ms. Clodgo's. Were there any doubt in this regard, one need only compare the final allegations and prayers from relief between the two complaints. Ms. Clodgo alleged that "[a]s a result of the Defendant's discrimination, Nancy Clodgo and Rene Benoit have incurred increased expense for his insurance coverage for which they seek compensation"; her prayer reads, "WHEREFORE, Nancy Clodgo and Rene Benoit seek Judgment against Green Mountain Transit for the damages they've suffered as a result of Green Mountain Transit's discriminatory conduct and for whatever other relief the Court deems just and equitable." Mr. Benoit's final allegation deletes Ms. Clodgo's name and "his" as a qualifier to "health insurance coverages"; his prayer similarly deletes Ms. Clodgo's name and adds a demand for attorney's fees; in all other respects the final allegations and prayers are identical. In short, the two claims are identical, asserting the same rights and seeking the same relief. The only difference is the identity of the party on whose behalf the relief is sought.

That difference, however, is not meaningful for res judicata purposes. Our Supreme Court has observed, "identity of parties exists where the parties or their privies are involved in both actions. A privity relationship generally involves a party so identified in interest with the other party that they represent one legal right." *Pomfret Farms Ltd. Partnership v. Pomfret Associates*, 174 Vt. 280, 284–85 (2002) (citation omitted). In his complaint, Mr. Benoit alleges that he was the third-party beneficiary of Ms. Clodgo's GMT-provided health insurance policy; that, in fact, is the allegation on which he asserts standing to attack GMT's allegedly discriminatory practice. *See* Opp'n to Mot. to Dismiss, 5. Were that allegation alone insufficient to establish an identity of interest, one need only return to the concluding paragraphs and prayers for relief discussed above. They make clear that it is in fact one and the same legal right that is at issue in both suits: the "right" of whoever was paying the premium for Mr. Benoit's coverage to pay no more than would be paid for coverage for any spouse of a GMT employee. This was a "right" that Mr. Benoit could exercise, if at all, only by virtue of his relation with Ms. Clodgo—after all, the health insurance coverage at issue was a benefit of her employment with GMT. Conversely, it was a "right" that Ms. Clodgo could exercise, if at all, by virtue of her relation with Mr. Benoit—she could have a claim for discrimination in premiums charged to domestic partners only if she had a domestic partner. In short, while, as Mr. Benoit observes, "Rene Benoit is his own person and Nancy Clodgo is her own person," *id.* at 4, they are clearly "so identified in interest with

[each] other . . . that they represent one legal right." *Pomfret Farms*, 174 Vt. at 285. Thus, res judicata applies, and precludes relitigation of the claims asserted here.

Mr. Benoit's assertion of rights as a third-party beneficiary is also fatal to his standing to attack GMT's practice of charging its employees additional premium payments for coverage for unmarried domestic partners. Here, Mr. Benoit's argument is wide of the mark. He asserts that his status as a third-party beneficiary of Ms. Clodgo's employer-based health insurance coverage confers standing to sue not the insurer but the employer. This is a critical distinction; whether one has a right to sue an insurer as a third-party beneficiary of an insurance contract is a very different question than whether a non-employee has a right to sue an employer for employment practices that by definition, can affect a stranger to the employment relationship only as a "third-party beneficiary" of those practices.

The point here is simple and obvious: the "right" that Mr. Benoit asserts arises not by virtue of his relationship to the insurance contract but as a consequence of Ms. Clodgo's employment relationship with GMT. While Mr. Benoit may have benefited indirectly from that relationship, legally, he remains a stranger to the relationship. Indeed, only in Mr. Benoit's lexicon could he be considered a "third-party beneficiary" of Ms. Clodgo's employment relationship. In this regard, the law is clear: "The fact that a contract would benefit a third party does not mean the third party has a right to enforce it. Many contracts benefit third parties, but those third parties are treated as incidental beneficiaries unless the contract language specifically indicates an intent to benefit them." *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 64, ___ Vt. ___; *see also McMurphy v. State*, 171 Vt. 9, 16 (2000) ("The determination of whether a party may be classified as a third-party beneficiary, as opposed to an incidental beneficiary, is based on the original contracting parties' intention."). A simple example amply illustrates the distinction. Had Mr. Benoit been Ms. Clodgo's stay-at-home spouse, so dependent on her income to qualify for income tax purposes as a dependent, he clearly would have been, in his lexicon, a "third-party beneficiary" of her employment relationship with GMT. Nobody would seriously suggest, however, that he would thus have standing to sue if she were underpaid, or even wrongfully terminated.

Thus, not surprisingly, Mr. Benoit does not cite—nor has the court's research found—a single case supporting the proposition that a spouse, significant other, child, or other person with a relationship to an employee has a right to sue an employer for breaches of duty in the employment relationship. Even if the family relationship is known to the employer, it cannot be said that the employer intends, in entering into the employment relationship, to confer anything other than an incidental benefit to its employees' families. *Cf. Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184

(1987) (to prove third-party beneficiary status, plaintiff would have to show that parties to contract "entered into their agreement in contemplation of conferring a benefit on the plaintiff"). In short, they are at best incidental beneficiaries of the employment contract and as such, lack standing to sue the employer. *See McMurphy*, 171 Vt. at 16 (holding that plaintiffs lacked standing to bring claim that city breached its contractual agreement with state to maintain highway intersection because plaintiffs were only incidental beneficiaries to contract). So too Mr. Benoit.

Analysis of the scope of the remedy afforded by the statute leads to the same conclusion. The statute itself is silent; it simply prohibits discrimination against "any individual." 21 V.S.A. § 495(a)(1). Nor has our Vermont Supreme Court directly addressed the question of whether the statute affords a remedy to spouses or domestic partners of employees who allege discrimination. In construing the VFEPA, however, the Court has looked to the federal courts' interpretation of Title VII of the Civil Rights Act of 1964. *Payne v. U.S. Airways Inc.*, 2009 VT 90, ¶ 10, 186 Vt. 458 (citing *Lavalley v. E.B. & A.C. Whiting Co.*, 166 Vt. 205, 209 (1997)). This is because "the VFEPA is patterned on Title VII . . . , and the standards and burdens of proof under VFEPA are identical to those under Title VII." *Id.* (quoting *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161 (1992)) (internal quotation marks omitted). Similarly, the Court has noted that "[t]he Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and its precedent provide useful analytical tools" in applying the age discrimination provisions of the VFEPA. *Ross v. Times Mirror Inc.*, 164 Vt. 13, 24 (1995). Whether brought under Title VII or the ADEA, federal courts have uniformly rejected nonemployee spouses' discrimination claims against employers. *See, e.g., Moss v. Stinnes Corp.*, 169 F.3d 784, 785 (1999) ("We hold, as have all other courts that have considered the question, that neither the ADEA nor the HRL affords a direct cause of action to a non-employee due to discrimination against his spouse."); *Gunawardana v. American Veterinary Medical Ass'n*, 2021 WL 289652, *14, ___F.Supp. 3d ___ (S.D. Ill. 2021) (courts in Seventh Circuit have rejected the logic that "everyone would be able to sue their spouse's employer because of the damages it causes to the household"); *Diaz-Romero v. Ashcroft*, 472 F. Supp. 2d 156, 161 (D. Puerto Rico 2007) ("plaintiff's spouse has no valid claim under Title VII"); *Bigsby v. Runyon*, 950 F. Supp. 761, 767 (N.D. Miss. 1996) (spouse has no standing to assert Title VII claim); *cf. Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998) ("only those plaintiffs who are 'employees' may bring a Title VII suit"). There is no reason to believe that our Court would buck this trend.

Finally, and equally plainly, Mr. Benoit's complaint fails to state a claim on which relief can be granted. It bears noting that his is a statutory claim; his right, if any, exists only by virtue of legislative

enactment and so the parameters of the claim are drawn by that enactment. Examination of the statute, however, reveals that it does not create the right he claims here. The VFEPA makes it unlawful "to discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age or against a qualified individual with a disability." 21 V.S.A. § 495(a)(1). "Marital status" is conspicuously absent from this catalog. Under well established rules of statutory construction, the court presumes that this omission was intentional. *In re D.C.*, 2016 VT 72, ¶ 31, 202 Vt. 340 ("As per the canon *expressio unius est exclusion* [sic] *alterius*, when a drafter itemizes 'members of an associated group or series,' we may justifiably infer that 'items not mentioned were excluded by deliberate choice, not inadvertence.' ") (citation omitted). That inference is stronger where, as here, the Legislature has shown that it knows how to include "marital status" as a protected classification. *See, e.g.,* 8 V.S.A. § 10403(a); 9 V.S.A. § 2388; 9 V.S.A. §§ 4502(a). And the inference is stronger yet when the Legislature has taken the opportunity to amend the statute to add a protected class but declined again to extend protections based on "marital status." *See* 2017, Adj. Sess., No. 184, § 1 (amending VFEPA to include "crime victim status" as a protected group).

"If the statute is unambiguous and its words have plain meaning, we accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further." *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 14, 177 Vt. 287. There is no ambiguity here; the words of the statute are clear. Thus, the court will not supply by inference or implication what the Legislature has chosen to omit. "Marital status" plainly is not a protected classification. Thus, a complaint alleging discrimination on the basis of marital status, supposedly in violation of VFEPA, fails to state a claim.

## ORDER

The motion to dismiss is granted. The case is dismissed with prejudice.



Samuel Hoar, Jr.
Superior Court Judge

So Ordered